[Civ. No. 20932.   Second Dist., Div. One.   June 7, 1955.]

Estate of HERSCHEL B. McGEE, Deceased.   BEULAH
LAYNE, Appellant, v. DOROTHY HALL, Respondent.

Barry Sullivan and Harry V. Leppek for Appellant.

Forster & Gemmill and Scott McCormac for Respondent.

DORAN, J.—This is an appeal by proponent, Beulah
Layne, from a judgment denying probate of a will.

As recited in appellant's opening brief:

"Herschel B. McGee died January 18, 1954.   By a Will
dated September 16, 1953, he left all of his property to Beulah
Layne and Lewis Layne.   He named Beulah Layne Executrix.
She presented the Will for probate.   Dorothy Hall, his daugh-
ter, whom he had not seen from the time she was about one
year of age, until she was about thirty-five years of age, con-
tested the probate on the following grounds:

"1.   Unsoundness of mind;

"2.   Lack of execution;

"3.   Undue influence.

"The latter two issues were submitted to the jury. The jury found that the Will was duly executed. The jury found that the Will offered for probate was the result of undue influence exercised from the testator, Herschel B. McGee.

"Judgment denying probate was thereupon entered.

"Appellants contend the evidence was insufficient to support the jury's findings of undue influence and that the Court committed prejudicial error in the giving and refusal of certain instructions."

As recited in respondent's brief,

"Beulah Layne and Lewis Layne, her husband, are not related to the decedent. Dorothy Hall is the decedent's daughter and only lineal descendent. Dorothy Hall was thirty-eight years of age at the time of the trial. Her mother and the decedent were divorced when she was a very young child. Dorothy Hall did not see her father after the divorce nor did not know his whereabouts until in 1937 when Dorothy Hall was about twenty-one years of age, she learned her father's address in Los Angeles and wrote to him. Thereafter Dorothy Hall and her father corresponded.

"In 1938, the decedent wrote Dorothy Hall a letter, dated September 26, 1938, which, together with the envelope, was introduced into evidence as Contestant's Exhibit No. 3 and is a part of the record on this appeal. A portion of the letter is as follows:

" 'I have no will made out, but if anything should happen to me, I want you to have what little I have. It isn't much, but it will help some. With love and best wishes to you and family.

Love,<br>Daddy.'

"In the summer of 1947 Dorothy Hall, together with her husband and children, came to Los Angeles to attend a religious convention and while here, visited the decedent. The first day in Los Angeles, Dorothy Hall and her family called upon the decedent and, although he did not recognize her at sight, when she told him who she was, there was a family reunion typical of that to be expected of a father and daughter long separated. The decedent posed for pictures with Dorothy Hall's husband and the decedent's grandchildren while they were here on this visit and two such pictures are in evidence and part of the record on this appeal.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"The decedent sent Christmas presents to his grandchildren

both before and after the 1947 visit and Dorothy Hall sent him Christmas presents and Father's Day gifts.

"On or about August 29, 1953, the decedent suffered a severe heart attack and was taken to White Memorial Hospital where he remained for a period of twenty days. While in the hospital the decedent signed two powers of attorney in favor of Beulah Layne during the first week of September, 1953, and a third power of attorney on or about September 15, 1953, the powers of attorney being prepared by Harry V. Leppek. Said latter power of attorney gave Beulah Layne authority to handle the money and property of the decedent.

"The alleged will bearing date of September 16, 1953, was executed while the decedent was still in the hospital. This will was prepared by Beulah Layne's attorney in this action, Harry V. Leppek. While decedent was in the hospital, Beulah Layne discussed a will with him and when she called Harry V. Leppek and in response to that call Harry V. Leppek went to the hospital and thereafter drew the will for the decedent. Beulah Layne was present at the hospital and at the bedside of the decedent when the alleged will of September 16, 1953, was executed. Her attorney in this action, Harry V. Leppek, had possession of the alleged will from the time of its execution until it was filed for probate. Beulah Layne admitted discussing a will with the decedent on several occasions.

"Dorothy Hall was not notified of her father's illness of September, 1953. Beulah Layne told Mrs. Sherman, Dorothy Hall's aunt, that she, Beulah Layne, would notify Dorothy Hall of the decedent's illness but she, in fact, did not. When confronted with this, Beulah Layne first told Dorothy Hall that she did not notify her because she did not know her address and then later told her that her father requested her not to.

"After the decedent was discharged from the hospital, he went to live at the Layne home and paid Beulah Layne $50.00 per week for his care. Around Christmas of 1953 the decedent moved out of the Layne home. The decedent told Anna Luck that he paid the Laynes $50.00 a week to take care of him and that they had him sign checks every other day or so and that he didn't have that kind of money.

"During the period after the decedent's discharge from the hospital in September, 1953, up until the time of his death the decedent had many conversations with Lee McGee who roomed in the same building as decedent and who is not

related to the decedent in any way although having the same last name. The decedent told Lee McGee that he, the decedent, had not heard from his daughter and that he could not understand why not. (Dorothy Hall wrote letters to her father during this period and in November of 1953, which was at the time the decedent was living at the Layne home, wrote her father about her daughter's wedding.) The decedent further stated to Lee McGee that he had dictated letters to Beulah Layne to his daughter, Dorothy Hall. Dorothy Hall testified that she did not receive these letters and although Beulah Layne took the stand she did not deny they were dictated to her. All parties testified that the decedent was paralyzed in his left arm as a result of the illness and that he was left-handed.

"In January, 1954, Lee McGee had another conversation with the decedent, and in that conversation decedent told Lee McGee that he was going to the hospital for a checkup and when he got back he was going to get a lawyer and make a will. The decedent further said that Beulah Layne had been trying to get him to make a will. The decedent further said that he had never made a will but that he was going to get his own lawyer up to his room and wanted Lee McGee to be present. The decedent further told Lee McGee that he had three bank accounts of about $15,000.00 and that he wanted his daughter, Dorothy Hall, to have one-half of it, or $7,500.00, and that he wanted $1,000.00 to go to Mrs. Vera Arnold, $500.00 to Beulah Layne and the balance to his brothers and sisters.

"Beulah Layne testified that she didn't see a copy of the alleged will and didn't know its contents until after decedent's death; whereas, casual friends testified they knew of the contents."

The record supports the foregoing summary of the facts.
■ That there was substantial evidence to support the verdict of the jury there is no question and the reviewing court is without power to disturb the verdict in such circumstances. (*Estate of Pohlmann*, 89 Cal.App.2d 563 [201 P.2d 446].)

■ Appellant's argument that the complaint contained no allegation of confidential relationship is without merit. To make such an objection for the first time on appeal is too late. ■ "Even where a complaint entirely omits an essential allegation, if the parties have treated it as sufficient throughout the trial and have permitted the issue to be tried

as though properly presented, a defendant cannot for the first time on appeal urge that the complaint, which could have been cured below if the objection had there been made, is defective." (3 Cal.Jur.2d, p. 620.) And the amendment to the complaint to conform to the proof was timely made. (*Lee* v. *Murphy*, 119 Cal. 364 [51 P. 549, 955].)

The instructions as to the law relating to confidential relationship were correct and the findings, as well, are supported by the evidence and the law.

There are no prejudicial errors.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied July 5, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 3, 1955.